# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO.

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **DECLARATORY JUDGMENT COMPLAINT** |
| ACE AMERICAN INSURANCE COMPANY, COMPASS HOLDINGS, INC, AND CROTHALL SERVICES GROUP | ) ) ) ) | |
| Defendants. | | |

COMES NOW, Plaintiff Zurich American Insurance Company ("Zurich American"), pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, and for its claim of declaratory relief against Defendants ACE American Insurance Company, Compass Holdings, Inc., and Crothall Services Group, alleges and states as follows:

## NATURE OF ACTION

1.      This is a civil action for declaratory relief to determine the respective rights and duties of the parties arising out of an insurance coverage dispute concerning a commercial general liability insurance policy and an underlying civil action entitled, *Rosie Mae Weathersby v. JohnsonDiversey, Inc., Unisource Worldwide, Inc., Procter and Gamble Distributing LLC, and Crothall Services Group,* United States District Court for the Central District of California, Case No. 2:08 CV 01196 (the "Underlying Action").

## PARTIES, JURISDICTION AND VENUE

2.      Zurich American is a New York corporation with its principal place of business in the State of Illinois.

3.      ACE American Insurance Company ("ACE") is a Pennsylvania corporation with its principal place of business in the Commonwealth of Pennsylvania.

4.      Compass Holdings, Inc. ("Compass") is a Delaware corporation with its principal place of business in Mecklenburg County at 2400 Yorkmont Road, Charlotte, North Carolina 28217.

5.      Crothall Services Group ("Crothall") is a Delaware corporation with its principal place of business in the Commonwealth of Pennsylvania.  Crothall is a subsidiary of Compass Group USA, Inc., which is a subsidiary of Compass Holdings, Inc.   Compass Group USA, Inc. is a North Carolina corporation with its principal place of business in Mecklenburg County at 2400 Yorkmont Road, Charlotte, North Carolina 28217.

6.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1), as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, among other things, the commercial general liability insurance policy in question was issued and delivered to Compass in Charlotte, North Carolina, the policy is governed by North Carolina law, the enforcement of the self-insured retention obligation under the policy must occur in Charlotte, North Carolina, and a substantial part of the events giving rise to the claim for declaratory relief in this case took place in this judicial district.

8.    This Court has personal jurisdiction over Defendants pursuant to N.C. Gen. Stat. §
1-75.4.

## INSURANCE POLICIES

9.    On or about September 30, 2004, Zurich American issued a commercial general
liability insurance policy to Compass, policy no. GLO 8344238-05, with a policy period of
September 30, 2004 to September 30, 2005 (the "Compass CGL Policy"). Compass is the first
named insured on the policy. In the policy's schedule of named insureds, Crothall is listed as a
named insured. The policy limit is $1,000,000 per occurrence / $10,000,000 general aggregate,
with a self-insured retention of $1,000,000.

10.    Upon information and belief, after the Compass CGL Policy expired, ACE issued
an excess liability insurance policy to Compass and/or Crothall for the policy period of
September 30, 2005 to September 30, 2006, and the ACE policy provided an excess layer of
coverage above a primary policy with another insurance company, with such primary policy
having a self-insured retention of $1,000,000.

## UNDERLYING ACTION

11.    On or about December 11, 2007, Rosie Mae Weathersby ("Weathersby") filed the
Underlying Action against Crothall and others in the Superior Court of the State of California for
the County of Los Angeles. The case was subsequently removed to United States District Court
for the Central District of California. Attached hereto as **Exhibit 1** is a true and accurate copy of
the Complaint. Weathersby filed an amended complaint on or about February 6, 2009. Attached
hereto as **Exhibit 2** is a true and accurate copy of the First Amended Complaint. Both pleadings
shall be referred to hereinafter as the "Weathersby Complaint."

12.     The Weathersby Complaint alleged that from about September 11, 2005 through August 2006, Weathersby worked as an environmental services technician at Cedars-Sinai Medical Center ("Center") in Los Angeles, California, that in the course of her work of cleaning bathrooms and other locations at the Center she worked with chemical products manufactured and supplied by the defendants other than Crothall, that as a proximate result of her use of those chemical products she was exposed to toxicologically significant amounts of toxins contained in and released from the chemical products as toxic vapors and gases, and that as a proximate result of said exposure to the toxic chemical products she sustained serious injuries to her internal organs, including interstitial lung disease.

13.     The Weathersby Complaint alleged that in the course of her work at the Center she directly received supervision, instruction and training from Crothall concerning, among other things, how she should use the chemical products and which products should be used in combination to clean objects and surfaces at the Center, that Crothall negligently supervised, instructed and trained Weathersby, that as a proximate result of such negligence she used the chemical products in an unsafe manner, thereby causing her to be exposed to toxicologically significant amounts of toxins contained in and released from the chemical products as toxic vapors and gases, and that as a proximate result of said exposure to the toxic chemical products she sustained serious injuries to her internal organs, including interstitial lung disease.

14.     The Weathersby Complaint alleged that Crothall was liable to Weathersby for personal injuries based on negligence, negligent exercise of retained control, negligence *per se* for violations of federal and California hazard communication standards, and negligent breach of voluntary undertaking.

4

15.     During discovery in the Underlying Action, Crothall presented evidence that it supervised, instructed and trained Weathersby and other environmental services technicians at the Center not to mix the chemical products when performing their work because mixing chemical products could produce a harmful gas that could cause lung disease or death.

16.     During discovery in the Underlying Action, Weathersby presented evidence that she used the chemical products known as Crew and Comet, among others, to perform her duties at the Center, that initially she did not mix Crew and Comet together, but that in approximately March 2006 she started using a mixture of Crew and Comet to clean sinks and toilet bowls.

17.     During discovery in the Underlying Action, Weathersby presented evidence that on August 7, 2006, she suffered an acute exposure from using a Comet-Crew mixture when cleaning the 5NE nurses' station sink and applying twice the amount of Comet that she normally used, that as a result she coughed, had a burning sensation in her eyes and nose, and felt burning in her lungs and chest, that she never used the Comet-Crew mixture again, and that as a result of the acute exposure that day she was hospitalized shortly thereafter and she sustained serious injuries to her internal organs, including interstitial lung disease.

18.     During discovery in the Underlying Action, Crothall presented evidence that exposure to Crew alone can be ruled out as causing Weathersby's injuries and that exposure to Comet alone can be ruled out as causing Weathersby's injuries.

19.     During discovery in the Underlying Action, Weathersby presented evidence that her exposure to the chlorine gas from the August 7, 2006 incident was sufficient to cause her lung damage and require a lung transplant.

20. During discovery in the Underlying Action, Crothall maintained the defense that the August 7, 2006 incident at the 5NE nurses' station sink was the sole cause of the injuries of Weathersby.

21. The Underlying Action was recently settled. As a result of the settlement and in exchange for a release of all claims, Crothall agreed to pay Weathersby the sum of $3,900,000.

22. As the excess insurer of Compass and/or Crothall for the policy period of September 30, 2005 to September 30, 2006, ACE agreed to fund $2,650,000 of the $3,900,000 settlement sum.

23. Upon information and belief, ACE is seeking contribution for its $2,650,000 payment out of the prior policy period of September 30, 2004 to September 30, 2005, as follows: $1,000,000 from Zurich American, which is the per occurrence policy limit of the Compass CGL Policy, and $1,000,000 from Compass pursuant to a self-insured retention under same policy.

## COVERAGE DISPUTE

24. There is an actual and justiciable controversy between Zurich American, Compass, Crothall and ACE with respect to coverage, rights and duties under the Compass CGL Policy and applicable law in connection with the Underlying Action.

### Trigger Issue

25. The Compass CGL Policy issued by Zurich American expired on September 30, 2005, only 19 days after Weathersby began her work as an environmental services technician at the Cedars-Sinai Medical Center, and thus the policy was not triggered by the occurrence alleged in the Underlying Action.

26. As stated in the commercial general liability coverage form of the Compass CGL Policy, Zurich American "will pay those sums that the insured becomes legally obligated to pay

as damages because of 'bodily injury' ... to which this insurance applies." The policy also states that "[t]his insurance applies to 'bodily injury' ... only if: (1) [t]he 'bodily injury' ... is caused by an 'occurrence' ...; (2) [t]he 'bodily injury' ... occurs during the policy period; ...."

27.     Given the evidence that Weathersby started using a mixture of Crew and Comet in approximately March 2006 to clean sinks and toilet bowls and given the evidence of her exposure to the chlorine gas from the August 7, 2006 incident at the 5NE nurses' station sink, coverage under the Compass CGL Policy was not triggered. Weathersby's bodily injuries did not occur during the policy period of September 30, 2004 to September 30, 2005. The bodily injuries first took place after the policy period of the Compass CGL Policy. Zurich American is not obligated to indemnify or make contribution to ACE.

### Self-Insured Rention Issue

28.     If the Compass CGL Policy is triggered for coverage for the settlement of the Underlying Action, which is denied, Zurich American has no liability for coverage until Compass pays the $1,000,000 self-insured retention under the Compass CGL Policy.

29.     As stated in the Self-Insured Retention Endorsement of the Compass CGL Policy, the policy has a self-insured retention of $1,000,000 per occurrence whereby "you shall be responsible for payment of all damages and 'pro rata defense costs' for each 'occurrence', until you have paid damages equal to the Per Occurrence Amount shown in the Schedule, ...."

30.     The Self-Insurance Retention Endorsement defines the term "self-insured retention" as "the amount or amounts which you or any insured must pay for all compensatory damages and 'pro rata defense costs' which you or any insured shall become legally obligated to pay because of damages arising from any coverage included in the policy."

31.     The Self-Insurance Retention Endorsement defines the term "pro rata defense costs" as "the proportion of 'defense costs' directly allocated to you or us for settlement of specific claims. The portion applicable to you is based on the ratio that the 'self-insured retention' amount bears to the total compensatory damages sustained. The portion of 'defense costs' applicable to us is based on the ratio that the amount of compensatory damages that we pay arising out of any 'occurrence' bears to the total amount of compensatory damages sustained from the 'occurrence'".

32.     As further stated in the Self-Insured Retention Endorsement, Zurich American "shall be liable only for the amounts of our share of 'pro rata defense costs' and damages in excess of the 'self-insured retention' amounts, as applicable, shown in the Schedule above, up to the applicable Limits of Insurance shown in the Declarations of the policy."

33.     To the extent ACE seeks contribution from Zurich American prior to the exhaustion of the $1,000,000 self-insured retention obligation of Compass under the Compass CGL Policy, Zurich American is not obligated to make contribution or indemnity to ACE.

### Late Notice Issue

34.     If the Compass CGL Policy is triggered for coverage for the settlement of Underlying Action, which is denied, Zurich American has no liability for coverage because it received late notice of the Underlying Action by Compass and Crothall.

35.     The Weathersby Complaint was first filed on December 11, 2007.

36.     Zurich American received its first notice of the Weathersby Complaint in November 2009, at which time Compass and Crothall gave such notice to Zurich American.

37.     As stated in the commercial general liability coverage form of the Compass CGL Policy, Compass and Crothall have duties in the event of an occurrence, claim or suit. In the

conditions section of the commercial general liability coverage form, the policy states: "You must see to it that we are notified as soon as practicable of an 'occurrence' ... which may result in a claim. ... If a claim is made or suit is brought against any insured, you must: ... notify us as soon as practicable ... [and] immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit',...."

38.     As stated in the Self-Insured Retention Endorsement of the Compass CGL Policy, "**E. Notification of Potential Penetration.** 1. [y]ou or the authorized claim service provider must notify us promptly of an 'occurrence' which may result in a claim under this policy. ... 2. You or the authorized claim service provider  must notify us promptly, per E.1. above, in the event of any 'occurrence' without regard to liability, which results in any of the following injuries: ... g. Severe internal body organ damage or loss; .... Where exposure, loss reserve or potential judgment initiates or changes or where suit is filed per the following: ... o. A suit is filed. We shall have the right to appoint defense counsel, even if the amount claimed in the suit is unspecified or less than the 'self-insured retention' amount shown in the Schedule of this endorsement for Per Occurrence or Per Claim, whichever applies."

39.     As further stated in the Self-Insured Retention Endorsement of the Compass CGL Policy, "[c]ompliance with the requirements set forth in this endorsement is a condition precedent to coverage.  You acknowledge that in the event of non-compliance, we shall not be required to establish prejudice resulting from the non-compliance, but shall be automatically relieved of liability with respect to any claim."

40.     Compass and Crothall failed to comply with the notice obligations under the Compass CGL Policy, including the Self-Insured Retention Endorsement.

41.     Compass and Crothall waited approximately 23 months from when Crothall was first sued by Weathersby to notify Zurich American of the civil action.

42.     This breach of the policy condition requiring proper notice is grounds for barring coverage from Zurich American under the Compass CGL Policy.

43.     Zurich American was also materially prejudiced by the late notice in its ability to investigate the claim of Weathersby, and thus coverage is barred on such basis as well.

## Allocation Issue

44.     Should the Court determine that Zurich American is liable to pay sums to or indemnify ACE as contribution toward ACE's settlement payment, which is denied, there would be a dispute among the parties as to the proper allocation between and among themselves of the liability to reimburse ACE.   Under such a scenario, Zurich American would not be responsible for damages sustained after the expiration of the Compass CGL Policy, and even then Zurich American would not be responsible for damages until after Compass pays its $1,000,000 self-insured retention.

45.     The Compass CGL Policy issued by Zurich American expired 19 days after Weathersby started working as a technician at the Center.  The policy had been expired for over 10 months before Weathersby was exposed to the chlorine gas during the August 7, 2006 incident at the 5NE nurses' station sink.

46.     Any allocation of liability to Zurich American should take into account that Weathersby had yet to sustain any bodily injury prior to the expiration of the Compass CGL Policy.

## CLAIM FOR RELIEF

### Declaratory Judgment

47.    Zurich American repeats and incorporates by reference the allegations contained in Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48.    Zurich American seeks a judicial determination of the respective rights, duties, and obligations of Zurich American, ACE, Compass and Crothall under the law and the Compass CGL Policy with respect to the Underlying Action.

49.    Zurich American is entitled to a declaratory judgment that the Compass CGL Policy was not triggered by the occurrence alleged in the Underlying Action. The bodily injuries of Weathersby and resulting damages first took place after the policy period of the Compass CGL Policy.

50.    To the extent ACE seeks contribution or indemnity from Zurich American, Zurich American is entitled to a declaratory judgment that Compass must first pay the $1,000,000 self-insured retention prior to Zurich American having any obligations to ACE.

51.    Zurich American is entitled to a declaratory judgment that Compass and Crothall breached the notice obligations under the Compass CGL Policy, including the Self-Insured Retention Endorsement, and Zurich American has no obligation to provide coverage toward ACE's settlement payment as a result.

52.    In the event of a judicial determination that Zurich American must pay sums to ACE as contribution toward ACE's settlement payment, Zurich American is entitled to declaratory relief of the proper allocation of liability of Zurich American, Compass, Crothall and ACE for the Weathersby damages. Zurich American is entitled to a declaratory judgment that it

11

is not responsible for damages sustained after the expiration of the Compass CGL Policy and not responsible for damages until after Compass pays its $1,000,000 self-insured retention.

53.     Upon information and belief, ACE contends that it is entitled to contribution from Zurich American under the Compass CGL Policy and disputes the coverage positions of Zurich American.

54.     Upon information and belief, Compass and Crothall assert that only the self-insured retention during the September 30, 2005 to September 30, 2006 policy period (after the expiration of the Compass CGL Policy) is exposed to liability in the Underlying Action.

55.     A judicial declaration is necessary and appropriate at this time so that the parties may ascertain their rights, duties, and obligations under the law and the Compass CGL Policy with respect to the claims of ACE for contribution toward the settlement of the Underlying Action.

WHEREFORE, Zurich American respectfully prays that the Court:

(a)     Declare that Zurich American has no liability to make contribution to, indemnify or otherwise pay ACE for any of the settlement payment made by ACE in the Underlying Action,

(b)     Declare the rights, duties, and obligations of Zurich American, ACE, Compass, and Crothall under the Compass CGL Policy with respect to the claims asserted by ACE for contribution toward the settlement of the Underlying Action, and

(c)     Award Zurich American such other and further relief as may be proper, just and/or necessary to resolve the controversy existing between the parties hereto.

This the 5th day of March, 2010.

NEXSEN PRUET, PLLC


/s/ James W. Bryan

James W. Bryan
N. C. State Bar No. 16575
Post Office Box 3463
Greensboro, NC  27402
Telephone: (336) 373-1600
Facsimile: (336) 387-8907
Email: jbryan@nexsenpruet.com
*Attorney for Plaintiff Zurich American Insurance Company*